**EXHIBIT 9**



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

In re JERRY L. SULLIVAN,
    on Habeas Corpus.

A118064

(Contra Costa County
Super. Ct. No. 070053-4)

BY THE COURT:

The petition for writ of habeas corpus is denied.

FILED

(Reardon, Acting P.J., and Sepulveda, J., joined in the decision.)

REARDON, ACTING P.J.

Date: _____    _____ P.J.

# CALIFORNIA APPELLATE COURTS



Case Information

| Welcome | | |
|---|---|---|
| Search | | |
| E-mail | | |
| Calendar | | |
| Help | | |
| Opinions | | |

## 1st Appellate District

Change court ▼

Court data last updated: 03/06/2008 09:05 AM

**Case Summary   Docket   Scheduled Actions   Briefs
Disposition   Parties and Attorneys   Trial Court**

## Docket (Register of Actions)

C|C
home

In re Sullivan on Habeas Corpus.
Division 4
Case Number A118064

| Date | Description | Notes |
|---|---|---|
| 06/13/2007 | Petition for a writ of habeas corpus filed. | |
| 06/21/2007 | Order denying petition filed. | |
| 06/21/2007 | Case complete. | |
| 06/28/2007 | Service copy of petition for review received. | from Sullivan; |
| 06/29/2007 | Record transmitted to Supreme Court. | |
| 08/21/2007 | Received copy of: | Answer to Petition to Review for Supreme Court Case No. S153841. |
| 08/24/2007 | Ext. by Supreme Court re: petition for hearing filed: | to 9-24-07; |
| 09/12/2007 | Petition for review denied in Supreme Court. | |

**Click here** to request automatic e-mail notifications about this case.

© 2007 Judicial Council of California

# EXHIBIT 10

~~~ ORIGINAL

JERRY L. SULLIVAN C-66878
SAN QUENTIN STATE PRISON 3-N-17
SAN QUENTIN, CA 94964

**In Pro Se**

# S153841

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

SUPREME COURT
FILED

JUN 26 2007

Frederick K. Ohlrich Clerk
_____
DEPUTY

In re )
) Case No.
JERRY L. SULLIVAN, ) (Appellate Ct. No. A118064)
)
            Petitioner, )
)
On Habeas Corpus )
_____ )

### PETITION FOR REVIEW

TO THE HONORABLE RONALD M. GEORGE, CHIEF
JUSTICE, AND TO THE HONORABLE ASSOCIATE
JUSTICE OF THE SUPREME COURT OF THE STATE OF
CALIFORNIA:

Petitioner Jerry L.Sullivan, hereby petitions this
Honorable Court, through counsel, pursuant to rules 8.500
and 8.516 of the California Rules of Court, for review of
the silent summary denial of Petitioner's Petition for Writ
of Habeas Corpus in the Court of Appeal, First Appellate
District Division Four, filed in the above-captioned matter
on June 21 2007. Exhibit "A"

////////////////

////////////////

////////////////

RECEIVED

JUN 2 6 2007

CLERK SUPREME COURT

i

## ISSUES PRESENTED FOR REVIEW

1. WHETHER THE BOARD OF PAROLE HEARINGS CAN DENY PAROLE ON THE GROUNDS THAT THE OFFENSE WAS CALCULATED, ESPECIALLY CRUEL, ESPECIALLY CALLOUS DISREGARD FOR HUMAN SUFFERING; ELEMENTS PRESCRIBED FOR DEATH PENALTY OR LIFE IMPRISONMENT WITHOUT PAROLE; SPECIAL CIRCUMSTANCE (PENAL CODE § 190.2 (14)), ON A KIDNAP CASE?

2. CAN THE BOARD OF PAROLE HEARINGS CONTINUE TO USE IMMUTABLE FACTORS SUCH AS COMMITMENT OFFENSE TO DENY PAROLE, ALTHOUGH THE COMMITMENT OFFENSE WAS NOT "PARTICULARLY EGREGIOUS", NOR WAS THE FORCE USED TO COMMIT THE OFFENSE MORE THAN THE MINIMUM NECESSARY TO COMMIT THE OFFENSE?

3. DOES PETITIONER'S COMMITMENT OFFENSE OF KIDNAP STILL HOLD ITS PREDICTIVE VALUE OF FUTURE VIOLENT BEHAVIOR AFTER OVER 25 YEARS OF ITS COMMITMENT, WHEN NO OTHER FACTORS SUCH AS PETITIONER'S INSIGNIFICANT CRIMINAL HISTORY, OR EXEMPLARY PRISON BEHAVIOR CONTRIBUTE TO ITS PREDICTABILITY?

4. WHEN COMPARED TO RECENT STATE COURT DECISIONS, REGARDING THE PREDICTIVE VALUE OF FUTURE VIOLENT BEHAVIOR BASED ON THE COMMITMENT OFFENSE, DOES THE PREDICTIVE VALUE OF PETITIONER'S OFFENSE OF KIDNAP BEAR MORE WEIGHT OF PREDICTABILITY FOR VIOLENCE THAN THE BELOW STATED, RECENT COURT DECISIONS OF MURDERERS WHOSE OFFENSE WERE FOUND NOT TO HOLD ANY PREDICTIVE VALUE?

## NECESSITY FOR REVIEW

The Board holds suitability hearings for inmates serving life terms for first degree murder second degree murder and kidnap. The overarching factor of determining parole suitability is whether a prisoner still poses a threat to public safety. In the instant action, no factors of unsuitability as described by regulations in the Cal. Code Regs., tit. 15 2281 (c) apply to Petitioner.

Furthermore, when Petitioner's commitment offense of kidnap is compared to the following California Appellate Court decisions regarding parole suitability of several

ii

convicted murderers, the Appellate Courts held that the commitment offense lost its predictive value after an extended period of time[1] The question that needs to be settled is whether Petitioner's commitment offense of kidnap is more egregious than a conviction for first or second degree murder? If not, than does the predictive value of the crime still have steam when no other unsuitability factors (such as the past criminal history and no serious misbehavior in prison) apply?

---

1. (In re Scott, (2005) 133 Cal.App. 573; In re Wenn, Lee, 2006) 43, Cal.App.4th 1400; In re Weider, (2007) 145 Cal.App.4th 570; In re Elkins, (2006) 144 Cal.App.4th 475 In re SANDRA LAWRENCE, Case No.B190874 p. 57-58; In DAVID BARKER, Case No. A114686 p. 29-30;

## INTRODUCTION

Petitioner filed the following petition for Writ of Habeas Corpus[2] because the Board of Parole Hearings (Board) denied Petitioner parole. The primary reason for the Board's denial was the commitment offense. This Court has consistently held that continuous denial of parole could violate a prisoners due process rights where the commitment offense was not "particularly egregious", or no more than the minimum necessary to convict for that offense. Petitioner has been to atleast ten parole suitability hearings.

Recently several California Appellate Courts have held that the commitment offense alone is not enough evidence to deny parole and loses its predictive value after several years (decades) since its commitment. When Petitioner's offense is compared to the above mentioned cases, based on Petitioner's insignificant criminal history and exemplary behavior in prison, Petitioner is equally deserving, as the above mentioned prisoners, (who were convicted of murder) of relief.

---

2. The following does not include exhibits.

I.

**THE BOARD OF PAROLE HEARINGS (BOARD) VIOLATED
PETITIONER'S STATE AND FEDERAL DUE PROCESS WHEN IT
FAILED TO CONSIDER RELEVANT AND RELIABLE INFORMATION
FAVORABLE TO PETITIONER'S SUITABILITY; AND RATHER
MADE AN ARBITRARY AND CAPRICIOUS DECISION TO DENY
PETITIONER PAROLE BASED ON THE NATURE AND CIRCUMSTANCES
OF PETITIONER'S CRIME WITHOUT "SOME EVIDENCE"**

Petitioner submits that the Board of parole Hearings
(Board) made an arbitrary and capricious decision to deny
Petitioner at his July 21, 2006 hearing, because the record
did not contain any evidence that the Petitioner presently
poses a danger to society. Furthermore the panel violated
Petitioner's due process rights by failing to consider all
relevant and reliable information demonstrating Petitioner's
parole suitability and lack of dangerousness, including the
mitigating circumstances of his crime. At the 2006 hearing,
the Board denied Petitioner a parole date stating:

> "However, we have reviewed all the information
> received from the public and relied on the
> following circumstances in concluding that the
> prisoner is not suitable for parole and would
> pose an unreasonable risk of danger to society
> or a threat to public safety if released from
> prison .. It was calculated. It was especially
> cruel and it did create human suffering... And
> a gun was used which created an especially --
> disregard for human suffering.... The gun was,
> in fact, pointed at Mr. Reily's head which, to
> me wold make an especially callous disregard
> for human suffering... . The motive for this
> crime was very trivial in relation to the
> offense in that those people are traumatized
> now because you needed money because you were
> living beyond your means."

(Exhibit "A" p. 90-91).

The Board found Petitioner would pose an unreasonable
risk of danger to society or a threat to public safety if
released from The panel drew this conclusion primarily from

the nature and circumstances of Petitioner's commitment offense, finding three out of the five factors, comprising an "especially heinous atrocious, or cruel" crime as identified in the California Code of Regulation Title 15 (CCR Title 15) § 2281 (c) "Circumstances Tending to Show Unsuitability", subsections (1), (B), (D), and (E), which state as follows:

> (1). "Commitment Offense. The Prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

> (B). The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

> (D). The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

> (E). The motive for the crime is inexplicable or very trivial in relation to the offense."

The Board especially relied on factors subsections (B), (D), and (E) section (c) (1). The Board described the crime as "calculated", and that the crime was carried out with "an especially callous disregard for human suffering because Petitioner and co-defendant "made an appointment with the [victims]... [they] had already calculated that [they] were going to kidnap them for the purpose of money for ransom", (15 CCR § 2281 (c) (1) (D)) and that "the motive for the crime was very trivial in relation to the offense" (15 CCR § 2281 (c) (1) (E)". As will be shown below none of these claims were supported by any evidence, nor "some evidence" in the record.[1]

---

1. See also Exhibits "B" and "C" for record of the crime.

2

## A. Petitioner's crime was not carried out in a dispassionate and calculated manner.

First, the Board claims that the crime was "calculated" because when Petitioner and co-defendant "made an appointment with the [victims]... [they] had already calculated that [they] were going to kidnap them for the purpose of money for ransom" Exhibit "A" p. 91, § (15 CRR §2281 (c) (1) (B). However, in light of the recent decision in In re Elkins, (2006) Cal. (First Appellate District, filed 10/30/06, Case No. A111925), the record demonstrates that the crime was not so "calculated" that it would prohibit parole. Petitioner and his co-defendant did kidnap the victims for the purpose of money for ransom. However, by presiding commissioner's own admission Petitioner had a stable social and work history and was able to "maintain up until the such time that [he] did." Exhibit "A". p. 92 This fact has substantial support in the record. Petitioner was twenty nine years old ad had no criminal record prior to meeting co-defendant and had supported himself as a roofer and tree trimmer. Unfortunately, Petitioner was drinking heavily and having financial problems when he first came in to contact with co-defendant (Exhibit "A" p.22). Co-defendant informed Petitioner that he had a way for him to make some "quick money" and influenced by his current life stressors - e.g. financial and alcohol problems Petitioner was unwisely excepted the offer. Exhibit "A" p.18

There is no evidence in the record that shows that Petitioner planned out this crime. Although Petitioner does

3

not deny the seriousness of his role in the crime, if falls short of being quite calculated." Petitioner was naive and ignorant to the workings of the criminal world and failed to recognize the gravity of such an offense is kidnapping. Exhibit "A" p. 19 A calculated crime is one which involves premeditation. In re George Scott,119 Cal.App 4th 871 890 (2004) Premeditation is defied as "Conscious consideration and planning that proceeds some act (such as committing a crime)" or "deliberation before a contemplated act." Black law Dictionary, Sixth Edition 1990. To the categorize Petitioner's role in this crime as "quite calculated, would require that Petitioner planned out the crime or, at the very least, sought out the victims. There is no evidence in the record to suggest that either of the aforementioned occurred.

Furthermore even if one excepts Commissioner Biggers conflicting determination of Petitioner's role in the kidnapping, it would still constitute an unchanging factor of the crime, and it would not be supported by "some vidence" pertinent to "relevant standard" promulgated by Board of Parole Hearings to comply with constitutional due process (In re Rosenkrantz, 29 Cal.4th at p. 657-658, 675-677). This is a classic case where, putting aside the commitment offense "all other factors clearly indicate [Petitioner] is suitable for release on parole." (Scott II, supra at 594) In Biggs, the Ninth Circuit explained that "[a] continued reliance in the future on an unchanging factor,, the circumstances of the offense and conduct prior

4

to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in due rocess violation." (Biggs, 334 F.3d at 917.)

Thus, the record clearly shows Petitioner's role in this crime was not one of a sophisticated criminal master mind, but one of an average citizen who's financial problems and "abuse of alcohol continued to the overall lack of judgement and erosion of the values with which he was raised." Exhibit "A" p. 93. Upon consideration of this extensive evidence, it is quite clear Petitioner's rule in this crime could not be even remotely calculated. The Board erroneously characterized Petitioner's crime as "calculated" by failing to consider, eve there own suggestion, which demonstrates that the crime was not "calculated" at all.

**B. Petitioner's crime was not carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.**

Contrary to the panel's conclusion that the crime showed an "especially cruel... [and] callous disregard for human suffering." the record does not show that Petitioner's involvement in the crime was exceptionally callous. Had the Board truly considered the relevant facts of Petitioner's case, it could not have drawn the conclusion that Petitioner's crime was exceptionally callous. First, commissioner Biggers characterizes Petitioner's crime as "especially callous " because a gun was used and pointed at the head of the victim. Biggers gives no other explanation as to why Petitioner's crime was "especially callous." The commissioner simply states "imagine the trauma you put these

5

people through the fact that you put a gun to their head."
Exhibit "A" p.91 Perhaps it is Commissioner Biggers belief
that he can simply speak his own facts of the crime into
existence. Petitioner does not deny the fact that his
victims were traumatized. Petitioner does not deny the fact
that his victims were traumatized. However, Petitioner's
commitment offense does not meet the 'particularly egregious
standard' as set forth by Rosenkrantz. Of course the victims
were traumatized, they were kidnapped for ransom by gun
point and had threats of injury and death made to them if
they did not comply. The threats of violence cannot support
unsuitability because kidnap for robbery always involves
either physical force or threats instilling fear and, thus
such threats are no more than what is minimally necessary
part of the crime. In order to demonstrate an "exceptionally
callous disregard for human suffering" the crime must have
been committed in a more aggravated or violent manner than
that ordinarily shown..." CCR Title 15 § 2282 Subd. (b) sets
forth examples of aggravated conduct reflecting an
exceptionally callous disregard for human suffering." (See
also In re Scott, 119 Cal.App.4th at 892.) These examples
include "torture" where the [V]ictim was subjected to the
prolonged infliction of physical pain through the use of
no-deadly force prior to [the] act resulting in death" and
severe trauma" as where "[d]eath resulted from severe trauma
inflicted with deadly intensity; e.g. beating, clubbing,
stabbing, strangulation, suffocation, burning, multiple
wounds inflicted with a weapon not resulting in immediate

6

death or actions calculated to induce terror in the victim."
None of these factors were present in Petitioner's crime.
Moreover, in order to support a parole denial, the Board
"must cite "some evidence" of aggravating facts beyond the
minimum elements of the offense.' In re Dannenberg, 34
Cal.4th at 1095   (citing Rosenkrantz). The facts of
Petitioner's crime which were discussed above do not contain
the type of violence or viciousness contemplated by § 2282
(b) that would covert Petitioner's crime into a
"particularly egregious" offense. In fact the Board lacks
any evidence of aggravating facts beyond the minimum
elements of the crime to support its parole denial. Id. By
these standards all crimes committed with a gun could be
considered "especially callous" and every "lifer" prisoner
convicted of using a gun in their case would have o hope of
ever getting out.

Furthermore, according to the Board's own matrix
guidelines for setting terms, CCR 15 section 22833 (c),
Petitioner has served as much time, with custody credit, as
the time in the matrix for kidnap/first degree murder and
"[I]t should be self evident that after an inmate has served
the equivalent of 25 years whether his actions were more
than minimal necessary for a [kidnapping] conviction... is
no longer the appropriate question. [The Board's] position
that inmates who were only convicted of [kidnapping] may
forever be denied parole based on some modicum of evidence
that their acts rose to the level of a first degree murder,
without acknowledging the fact that they have already served

7

the time for a first, should be seen as so ridiculous that simply to state it is to refute it." <u>In re Bernard John Weider</u>, 2006 DJDAR 15795 at 15798.

### C. Petitioner's motive for the crime was not very trivial in relation to the offense.

The Board characterized Petitioner's crime as "very trivial because Petitioner committed the crime simply because he "needed money [and] was living beyond [his means]. Exhibit "A" p. 91 Commissioner Bigger goes on to state that Petitioner's crime is "even more trivial" because Petitioner had a full time job when he committed the offense which is a standard that Petitioner is unfamiliar with. It is improper for the Board to have relied on the factor of triviality of the motive in relation to Petitioner's offense – the crime having been committed to obtain money– because material gain is always the motive for Kidnap Robbery. To obtain money, is not, in and of itself, trivial in relation to the Petitioner's offense, such that the offense can be said to have been committed in an "especially heincus, atrocious or cruel manner." (CCR Title 15 § 2281 subd. (c) (1).) This motive therefore does not elevate Petitioner's actions beyond what is minimally necessary to sustain a conviction for this offense.

### D. Petitioner Does not "pose a Current Threat to Public Safety.

The parole process by its nature looks to the current condition of the prisoner to determine the present risk of danger he or she poses. It is a dynamic process meant to protect the public from potentially dangerous criminals by

8

assessing potential parolees' continual progress and **current** psychological and mental health and propensity for violent behavior. In the instant cause of action commissioner Star read into the record a psychological evaluation conducted by Dr. Inaba, a Licensed Psychologist, who found the following diagnosis:

> "The factors that would come into play to determine risk would be lack of insight, negative attitudes, lack of mental ill -- illness, or failure at treatment wold be considered as possible sources of increased risk. But on -- based on review of Mr. Sullivan's present institutional record and clinical interview conducted for this report it would appear that none of these risk factors is currently present."

Exhibit "A" p. 62. Exhibit "D" p. 3-4. Dr. Inaba further states:

> "Mr. Sullivan's age, commitment to on going substance abuse treatment, and limited criminal history, he would be expected to be able to continue to live a positive, nonviolent life when released to the community."

(Exhibit "A" p. 63. Exhibit "D" p. 4)

Furthermore, the Board also found factors favorable to Petitioner being suitable for parole, stating the following:

> "The Panel took notice that you had no previous history of -- and this is your -- this offense was your first time being involved... I think that -- I don't think your history was that bad. I don't think it was unstable because you did have a job,... Your institutional behavior has be -- I would say pretty close to being exceptional. You've had no 115's. You've had no 128's. ad that's remarkable...That every -- year you come in here you seem to have increased yourself even more and you should be -- and you will be commended for that at -- at a later time... But -- and the last statement that I want to quote directly from the psychiatrist report, it's also -- and she's stating and I said quote "he's also clear about his remorse for his actions and his willingness to continue his participation in self-help and rehabilitation activities." <u>And bottom-line that's an indication to us that you will be a low risk on the outside</u>."

(Exhibit "A" p. 93.) How can the Board make such a statement such as "**[a]nd the bottom-line that's an indication to us that you will be a low risk on the outside**", and then turn around and deny Petitioner parole.

## CONCLUSION

If the Board can find all the factors that point to parole suitability present at a prisoners parole suitability hearing and then turn around and state that parole is being denied because of the commitment offense. That the offense was calculated, especially cruel, and "especially callous disregard for human suffering,"; And then turn around with the same breath and state that Petitioner's participation in self help activities is an indication that he would pose a low risk on the outside, is contradictory. It is apparent that the parole decision in this action is arbitrary and capricious. Especially when considering that Petitioner has a minimal criminal history and has an exemplary prison record.

For all of these reasons, Petitioner respectfully requests this Honorable Court grant review to consider these important issues.

Dated: June 24, 2007

Jerry L. Sullivan
**In Pro Se**

10

# DECLARATION OF SERVICE BY MAIL

I, Noel Valdivia Sr. _____, the undersigned, declare:
   Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within. My residence address is:

   CDC No. C-29917 ____    Housing   3-N-21 ____
   San Quentin State Prison
   San Quentin, CA 94974

On ___June 24_____, 2007__, I served the following document(s):
   Month/Day            Year

___"PETITION FOR REVIEW"_____

_____

_____

_____

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

| | |
|---|---|
| CALIFORNIA COURT OF APPEALS | OFFICE OF THE ATTORNEY GENERAL |
| FIRST APPELLATE DISTRICT | DEPARTMENT OF JUSTICE |
| 350 McALLISTER ST. | |
| SAN FRANCISCO, CA 94102 | 455 GOLDEN GATE AVE. SUITE 11000 |
| | SAN FRANCISCO, CA 94102-7004 |
| CONTRA COSTA SUPERIOR COURT | |
| 725 COURT ST. | |
| MARTINEZ, CA 94553-1233 | |

I swear under penalty of perjury that the foregoing is true of my own personal knowledge. Executed on this _29__ day of __June_____, 2007__, at San Quentin, CA, County of Marin.

_Noel Valdivia Sr._
   Signature of declarant

EXHIBIT "A"

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JERRY L. SULLIVAN, on Habeas Corpus. | A118064 (Contra Costa County Super. Ct. No. 070053-4) |

BY THE COURT:

The petition for writ of habeas corpus is denied.

FILED

JUN 2 1 2007

(Reardon, Acting P.J., and Sepulveda, J., joined in the decision.)

REARDON, ACTING P.J.

Date: _____  _____ P.J.

# EXHIBIT 11

Court of Appeal, First Appellate District, Div. 4 - No. A118064
S153841

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re JERRY L. SULLIVAN on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

SEP 1 2 2007

Frederick K. Ohlrich Clerk

—————————————
Deputy

GEORGE
—————————————
Chief Justice